IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| GLENYS DUKES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL CASE NO. 1:23-cv-648-ECM |
| ) | [WO] |
| SANOFI US SERVICES, INC., *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

This case concerns the chemotherapy drug Taxotere, which until recently was part of a multidistrict litigation where plaintiffs alleged that they developed permanent alopecia after use of the drug. This case, filed by Plaintiff Glenys Dukes ("Dukes"), was then remanded to this Court. Now pending before the Court is Defendants' Sanofi-Aventis U.S. LLC and Sanofi US Services Inc.'s ("Sanofi") motion for judgment on the pleadings. (Doc. 29). After reviewing the parties' submissions, the Court finds that the motion (doc. 29) is due to be granted.

The Plaintiff in her response also requests leave to amend her complaint to allege case-specific facts. (Doc. 34). The Court construes this as a motion for leave to amend the complaint. For the reasons stated, that motion (doc. 34) is due to denied.

## II. STANDARD OF REVIEW

### A. Motion for Leave to File an Amended Complaint

"A party may amend its pleading once as a matter of course no later than . . . 21 days after serving it." FED. R. CIV. PRO. 15(a)(1). "In all other cases a party may amend its pleading only with the opposing party's written consent or the court's leave." FED. R. CIV. PRO. 15(a)(2). "[L]eave to amend shall be freely given when justice so requires," *Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (citation omitted), but "it is 'not an automatic right.'" *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (citation omitted). The Court may deny leave "where there is substantial ground for doing so, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (alteration in original) (citing *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999)).

### B. Judgment on the Pleadings

"Granting judgment on the pleadings is appropriate when 'there are no material facts in dispute and the moving party is entitled to judgment as a matter of law.'" *Thompson v. Regions Sec. Servs., Inc.*, 67 F.4th 1301, 1305 (11th Cir. 2023) (citation omitted). "All facts alleged in the complaint must be accepted as true and viewed in the light most favorable to the nonmoving party." *Douglas Asphalt Co. v. Qore, Inc.*, 541 F.3d 1269, 1273

(11th Cir. 2008) (citing *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001)).

## III.  JURISDICTION

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.  The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## IV.  STATEMENT OF FACTS

The case before the Court was remanded from the multidistrict litigation *In re: Taxotere (Docetaxel) Products Liability Litigation*, No. 2:16-md-2740 (J.P.M.L.) ("the MDL Court").  The Plaintiff filed the instant case on December 9, 2016, and it was remanded to this Court from the MDL Court on November 3, 2023.  The operative pleadings consist of the Second Amended Master Complaint ("SAMC") (doc. 11-4 at 342) and Duke's First Amended Short Form Complaint ("FASFC") (doc. 9), which contains her individual allegations.  In granting the plaintiffs' motion for leave to file the SAMC, the MDL Court ordered Sanofi not to plead in response to the SAMC, and that Sanofi's answer to the First Amended Master Complaint would be deemed its answer to the SAMC. Doc. 4230, at 2, *In re: Taxotere*, No. 2:16-md-2740.  The following facts, taken in the light most favorable to Dukes, are alleged in the SAMC.

Taxotere is a chemotherapy drug primarily administered to those suffering from breast cancer. Sanofi is a pharmaceutical company involved in the development, testing, manufacturing, labeling, marketing, and selling of Taxotere.  The Food and Drug Administration ("FDA") approved Taxotere for various uses in the 1990s and early 2000s.

3

Initially, hair loss was listed as a "possible side effect" of Taxotere. (Doc. 11-4 at 365). Temporary and reversible hair loss ordinarily results from chemotherapy. Over the years, however, permanent hair loss, or Permanent Chemotherapy Induced Alopecia ("PCIA"), became a well-documented and studied side effect of Taxotere and began to be reported on by news outlets in 2010. PCIA "is defined as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." (*Id.* at 378). Alopecia lowers self-esteem and quality of life, and causes anger, anxiety, sadness, and other negative emotional effects.

Meanwhile, according to Dukes, Sanofi continued to mislead consumers as to the serious side effects of Taxotere. For example, Sanofi and its sales associates "cherry picked" positive data, emphasized certain side effects over others, and distributed materials to physicians which were banned by the FDA. In 2015, after Sanofi submitted new information to the FDA about PCIA, updated warnings were added to the drug's Patient Counseling Information advising physicians to inform patients of some documented cases of permanent hair loss, but that "in most cases normal hair growth should return." (*Id.* at 366). The drug's label, however, did not mention PCIA.

Dukes alleges that she used Taxotere from May 2010 to June 2010. She filed her complaint on December 9, 2016, and then filed her FASFC on May 31, 2017. Under Question 12 of the FASFC: the "Nature and extent of the alleged injury," Dukes alleges that she has suffered severe personal injuries, including permanent alopecia, medical expenses, future loss of earnings, mental anguish, and loss of enjoyment of life. (Doc. 9 at 4). Apart from this statement, and when and where the drug was administered, no other

4

case-specific facts are alleged. Dukes brings claims for strict products liability failure to warn (Count One),[1] negligence (Count Three), negligent misrepresentation (Count Four), fraudulent misrepresentation (Count Five), fraudulent concealment (Count Six), and fraud and deceit (Count Seven).

## V.  DISCUSSION

### A. Motion for Leave to File an Amended Complaint

Because it is relevant to deciding the motion for judgment on the pleadings, the Court first turns to Dukes' motion for leave to file an amended complaint. The MDL Court stated upon remand to this Court that "[a]ll deadlines for Plaintiffs to amend their individual complaints without leave of court have passed." (Doc. 12 at 76).[2] The Defendants also oppose the motion. (*See* doc. 35 at 2–6). Dukes seeks leave to amend her complaint to provide "case-specific facts and to avail herself of Alabama substantive law." (Doc. 34 at 4). She states that the amended complaint will plead facts that will satisfy Rule 9 and describe Sanofi's deceptive marketing efforts. (*Id.* at 5–7). Dukes represents in her motion that she "was not allowed to amend her complaint with case-specific facts and to avail herself of Alabama substantive law in the MDL." (*Id.* at 5). She further represents

---

[1] Counts are numbered according to the labels on the checked boxes in the FASFC. Further, the Defendants point out that the MDL Court dismissed the plaintiffs' claims for strict products liability for misrepresentation (Count Two), and breach of express warranty (Count Eight). The Plaintiff does not dispute this contention, and the MDL Court's Case Management Order No. 39, which summarized the proceedings for this Court, confirms that these claims were dismissed. (Doc. 12 at 74–75). Thus, the Court does not examine Count Two or Count Eight.

[2] This Court has not entered a scheduling order in this case. Neither party has argued that the MDL Court's scheduling order should be modified pursuant to Rule 16(b). Thus, the Court only considers the amendment pursuant to Rule 15(a).

that in a pre-trial order, the MDL Court entered a stipulation where the parties agreed that "Plaintiffs whose cases were remanded to their forum courts would not seek to amend claims as a matter of course, and that Defendants would not assert that the right to amend complaints had been waived." (Doc. 34 at 2 (citing doc. 11-2 at 167 (hereinafter "PTO (Pretrial Order) 105")). Consequently, she argues, she was "unable to allege individual case-specific facts." (*Id.*).

The Defendants take issue with the Plaintiff's amendment for three reasons. First, the Defendants argue that the Plaintiff had opportunities to amend her Short Form Complaint in the MDL proceedings to add the details she seeks to add now. Second, although Dukes did not submit a proposed amended complaint, the Defendants speculate that the amendments the Plaintiff seeks to add were already considered and rejected by the MDL Court. Finally, they contend that Dukes misrepresents PTO 105, which in their view gave broad leeway to amend short form complaints.

### *1. The MDL Proceedings*

After the Defendants in the previous MDL proceedings moved to dismiss the fraud claims in the Master Complaint for failure to plead with particularity, the MDL Court acknowledged in an August 30, 2017 hearing before Judge Engelhardt that "a master complaint could not possibly be expected to include every case-specific detail such as a particular misleading statement made by a particular sales representative to the physician of an individual plaintiff." Hearing Transcript, Doc. 823, at 22, *In re: Taxotere*, 2:16-md-02740. Thus, the Court considers both the Master Complaint and the Plaintiff's Short Form Complaint in deciding the sufficiency of the pleadings. (*Id.*). The MDL Court then ruled

that "specific allegations, particularly with respect to fraud, should be perfected within the short form complaints filed in the individual member cases." (*Id.* at 23).[3] The Plaintiff alleges that despite this ruling, she was unable to satisfy Rule 9 in her Short Form Complaint.

On December 11, 2019, the MDL Court denied the Plaintiffs' Steering Committee's motion for leave to file a Third Amended Master Complaint, where the plaintiffs sought to "no longer define their injury as manifesting six months after chemotherapy" and to "describe in greater detail 'the actions and inactions of Defendants that [are] alleged to have caused harm to the plaintiffs in this litigation in regard to the allegations of fraudulent concealment, including but not limited to Sanofi's marketing efforts.'" (Doc. 11-4 at 1425–26). After oral arguments and considering Rule 15(a)(2), the MDL Court found that the amendment "would negate a significant amount of work that has been done in this MDL," additional discovery would be needed, and the amendment would moot earlier rulings by the MDL Court. (*Id.* at 1428). Consequently, the MDL Court denied the motion because the Defendants would suffer undue prejudice if the amendment were allowed. (*Id.* at 1429). The Court also denied amendments to certain short-form complaints which sought to "buttress their claims against statute-of-limitations defenses," because the "amendments would prompt Defendants to conduct additional discovery and prepare a different statute-

---

[3] In Case Management Order No. 39, the MDL Court confirmed that "[the MDL Court] has ruled that any fraud-based claims must be perfected within the short form complaints filed in the individual member cases." (Doc. 12 at 75).

7

of-limitations defense." (*Id.* at 1434). The Defendants speculate that the Plaintiff's amendments will be the same as those already denied by the MDL Court.

On May 11, 2020, the MDL Court gave instructions for plaintiffs wishing to amend their short form complaints to address the statute of limitations, in light of an influx of motions to amend short form complaints after the Court denied the Third Amended Master Complaint. (Doc. 11-2 at 167). In PTO 105, the MDL Court ordered that "Plaintiffs may amend their complaints to add factual allegations regarding particularized facts individual and specific to each Plaintiff's medical care and treatment and/or that Plaintiff's communications with medical professionals." (*Id.*). The deadline for plaintiffs to amend their short form complaints was forty-five days from the date of the order for bellwether pool plaintiffs and one hundred and eighty days of the order for non-bellwether pool plaintiffs. (*Id.* at 168). The parties subsequently stipulated that plaintiffs would not seek leave to amend their short form complaints to add or include allegations inconsistent with PTO 105's limitations. (*Id.* at 169). Despite this order, the Plaintiff now contends that PTO 105 rendered her "unable to allege individual case-specific facts because she was beholden to the controlling master complaint." (Doc. 34 at 3).

### 2. Rule 15

The Court now turns to the question of whether leave to amend should be granted under Rule 15. The Plaintiff seeks to file an amended complaint when litigation has been ongoing for over six years, the MDL Court has ruled on motions to dismiss, the parties have already conducted significant discovery, and multiple bellwether trials have been held. The MDL Court made clear early on that the Short Form Complaint should allege

the type of details the Plaintiff now seeks to add. The MDL Court also entered orders providing for time to seek amendments. "If there was any thought by Plaintiff that she needed to amend her complaint, that window closed a long time ago." *Pringle v. Johnson & Johnson*, 2019 WL 9654850, at *6 (S.D. Fla. Nov. 6, 2019). [4] Nevertheless, the Plaintiff explains her failure to amend by arguing that PTO 105 prevented her from alleging case-specific facts. The Court finds this argument unavailing.

Dukes represents that PTO 105 reflected an agreement that "Plaintiffs whose cases were remanded to their forum courts would not seek to amend claims as a matter of course, and that Defendants would not assert that the right to amend complaints had been waived." (Doc. 34 at 2). However, PTO 105's language indicates that Dukes agreed not to seek amendments inconsistent with PTO 105's limitations. Moreover, the parties' stipulation pursuant to PTO 105 provided a process for the Plaintiff to "show cause why their proposed allegations should not be stricken" if the Defendants challenged whether the proposed language was appropriate for amendment. (Doc. 11-2 at 170). The Plaintiff failed to take advantage of this opportunity. The MDL Court record also shows that other plaintiffs were able to amend their Short Form Complaints to incorporate detailed case-specific allegations. *See e.g.*, Plaintiffs' Motion for Leave to File Amended Short Form Complaints of Bellwether Pool Plaintiffs, Doc. 10817, *In re: Taxotere*, No. 2:16-md-2740; Order Granting Motion in Part and Denying in Part, Doc. 11825, *In re: Taxotere*, No. 2:16-md-2740. Question 12 of the Short Form Complaint prompts the Plaintiffs to detail the

---

[4] The Court here, and elsewhere in the opinion, cites to non-binding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

"[n]ature and extent of alleged injury (including duration, approximate date of onset (if known), and description of alleged injury)." (Doc. 9 at 4).  Further, Question 13 allows for Plaintiffs to assert additional theories against the Defendants and directs them to set forth such claims.

Not only did the Plaintiff fail to file a motion to amend in the time allowed by the MDL Court, but, as the Defendants correctly note, the amendments the Plaintiff describes are similar to those previously denied.  For example, the Plaintiff seeks to add facts that "demonstrate the Defendants undertook affirmative acts of misrepresentation" through a crisis management team and social media monitoring, which obstructed her ability to bring her claim. (Doc. 34 at 5).  The MDL Court previously denied the plaintiffs' motion for leave to file a Third Amended Master Complaint where the plaintiffs sought to "describe in greater detail 'the actions and inactions of Defendants that [are] alleged to have caused harm to the plaintiffs in this litigation in regard to the allegations of fraudulent concealment, including but not limited to Sanofi's marketing efforts.'" (Doc. 11-4 at 1426).  The Plaintiffs proposed amendments sound strikingly similar to those described by the MDL Court.

Because the Plaintiff has failed to amend her complaint in the seven years that this case has been pending with no justification beyond working pursuant to the MDL Court's orders, the Court finds that the Plaintiff engaged in undue delay in filing her motion. *See Carlson v. FedEx Ground Package Sys., Inc.*, 2012 WL 12898877, at *2 (M.D. Fla. May 3, 2012). ("To permit Plaintiffs to bring such claims now—seven years after this case was filed, with essentially the same supporting evidence, and with no indication that the

10

proposed amendments are based on newly acquired evidence—would be to countenance undue delay."). For years, the MDL Court has been working pursuant to the SAMC. "The primary purpose of multidistrict litigation is to 'promote efficiency through the coordination of discovery,'" and the "Plaintiff's Motion to Amend frustrates this core purpose." *Pringle v. Johnson & Johnson*, 2019 WL 9654850, at *6 (S.D. Fla. Nov. 6, 2019) (citation omitted). Consequently, the Court in its discretion finds leave to amend inappropriate under Rule 15(a) and considers the SAMC and FASFC currently before the Court in examining the Defendants' motion.

### B. Motion for Judgment on the Pleadings

The Court now turns to the Defendants' motion for judgment on the pleadings. The Defendants argue that Dukes did not plead her fraud claims with the particularity required by Rule 9(b), and that her other claims are time-barred. The Court addresses each of the Defendants' arguments in turn.

#### 1. *Fraud Claims Under Rule 9(b)*

Dukes brings four claims sounding in fraud: negligent misrepresentation, fraudulent misrepresentation, fraudulent concealment, and fraud and deceit. *See Holland v. Ethicon, Inc.*, 2021 WL 3432833, at *2 (M.D. Ala. Aug. 5, 2021) ("[Plaintiff's] negligent misrepresentation claim sounds in fraud under Alabama law." (citing *Bryant Bank v. Talmage Kirkland & Co., Inc.*, 155 So. 3d 231, 235 (Ala. 2014)). The Defendants argue that Dukes did not plead these claims with the particularity required by Rule 9(b). Under Rule 9(b), "[i]n alleging fraud . . . , a party must state with particularity the circumstances

11

constituting fraud . . . ." FED. R. CIV. P. 9(b).  To satisfy Rule 9(b), the complaint must set forth

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

*Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 875 (11th Cir. 2023) (citation omitted).

As stated before, the MDL Court acknowledged in an August 30, 2017 hearing before Judge Engelhardt that "a master complaint could not possibly be expected to include every case-specific detail such as a particular misleading statement made by a particular sales representative to the physician of an individual plaintiff." Hearing Transcript, Doc. 823, at 22, *In re: Taxotere*, 2:16-md-02740.  Indeed, the allegations in the SAMC "are not enough to satisfy the who, what, when, where, and how required by Rule 9(b)" as it concerns Dukes specifically. *Young*, 57 F.4th at 876; *see Maxwell v. Sanofi-Aventis U.S. LLC*, 2023 WL 7115575, at *2 (N.D. Ala. Oct. 27, 2023).  Thus, the Court considers both the SAMC and the Plaintiff's FASFC in deciding the sufficiency of the pleadings. Hearing Transcript, Doc. 823, at 22, *In re: Taxotere*, 2:16-md-02740.

The MDL Court then ruled that "specific allegations, particularly with respect to fraud, should be perfected within the short form complaints filed in the individual member

12

cases." (*Id.* at 23).[5] Dukes, however, did not amend her complaint to perfect her allegations of fraud. Dukes did not allege what statements mislead her, at what time and place the statements were made, or who made the statements. The only information specific to Dukes are the dates she was administered Taxotere, and that it was administered in Alabama. Consequently, the Court finds that Dukes' claims of fraud are due to be dismissed for failure to plead with particularity.

### 2. Statute of Limitations

The Defendants next argue that Dukes' remaining claims are time-barred. Dukes' negligence and failure to warn claims are subject to a two-year statute of limitations. *Bush v. Ford Life Ins. Co.*, 682 So. 2d 46, 47 (Ala. 1996) (per curiam) ("The statute of limitations applicable to a negligence claim is two years."); ALA. CODE 1975, § 6–2–38(l) ("All actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in this section must be brought within two years."); *McKenzie v. Janssen Biotech, Inc.*, 295 So. 3d 617 (Ala. 2019) (applying two year statute of limitations to failure to warn claims). Under Alabama law, the "statute of limitations begins to run when the cause of action accrues, which . . . is the date the first legal injury occurs." *Ex parte Abbott Lab'ys*, 342 So. 3d 186, 194 (Ala. 2021) (citing *Ex parte Integra LifeSciences Corp.*, 271 So. 3d 814, 818 (Ala. 2018)). Further, "[a] cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the

---

[5] In Case Management Order No. 39, the MDL Court confirmed that "[the MDL Court] has ruled that any fraud-based claims must be perfected within the short form complaints filed in the individual member cases." (Doc. 12 at 75).

13

damage is apparent at the time of the first legal injury." *Id.* at 194 (citing *Chandiwala v. Pate Constr. Co.*, 889 So. 2d 540, 543 (Ala. 2004)).

The SAMC defines PCIA "as an absence of or incomplete hair regrowth six months beyond the completion of chemotherapy." (Doc. 11-4 at 378). The Defendants contend that applying the alleged definition of PCIA here, the statute of limitations on Dukes' claims began to run in December 2010, six months after completion of her chemotherapy and when she first suffered from PCIA. Accordingly, they argue, the complaint filed on December 9, 2016 was filed outside the two year statute of limitations. For the reasons stated below, the Court agrees.

The Plaintiff first disputes that the SAMC's definition of PCIA controls, although she does not elaborate further on this contention. However, the "Plaintiff concedes that under . . . Alabama law . . . Plaintiff sustained her injury (failure to regrow hair) outside of the two-year limitations period." (Doc. 34 at 1). Nevertheless, the Plaintiff contends that the Defendants fraudulently concealed the claim from her, and that she is entitled to equitable tolling.

In Dukes' case, the injury alleged is PCIA and its effects. Dukes alleges in the SAMC that temporary alopecia becomes PCIA six months after completion of chemotherapy. The allegations further indicate that she was aware of her injury at that time because it is a visible condition, which "heighten[s] awareness" of appearance, lowers self-esteem, and causes other severe emotional distress. (Doc. 11-4 at 386–87). "These allegations prevent [Dukes] from asserting that she was unaware of 'the nature, seriousness, and compensable character of' her hair loss," even if she was unaware of its

14

full extent at the time. *Maxwell*, 2023 WL 7115575, at *4 (citing *Dillard*, 372 So. 3d at 555); *see Walker v. Flagstar Enterprises, Inc.*, 981 So. 2d 1137, 1141 (Ala. Civ. App. 2007) (rejecting the argument that the latent-injury exception should apply when the plaintiff "did not know or have reason to know the 'full extent' of her disability—*i.e.*, she did not realize that she had a permanent total disability," in the workers' compensation context).

Other courts, including the MDL Court, have held plaintiffs to the alleged definition of PCIA in the SAMC and thus measured the timeliness of plaintiffs' claims from six months after the completion of their chemotherapy. (Doc. 12 at 95–96); *Maxwell*, 2023 WL 7115575; *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2021 WL 3006968, at *3 (E.D. La. July 14, 2021) ("On the face of the pleadings, then, [p]laintiff sustained her injury in March 2015, when she had incomplete hair regrowth six months after she completed her chemotherapy treatment."); *In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 2020 WL 8257755, at *2 (E.D. La. Jan. 23, 2020), *aff'd*, 995 F.3d 384 (5th Cir. 2021) ("This Court agrees with [d]efendants that [p]laintiff's case is prescribed on the face of the pleadings.").[6]

Maintaining this analysis, the Court finds that Dukes's claim arose at the time she alleged she first suffered from PCIA, "regardless of whether the full amount of the damage [was] apparent [to Dukes] at the time." *Ex parte Abbott Lab'ys*, 342 So. 3d at 194 (citing *Chandiwala*, 889 So. 2d at 543). Thus, under the facts alleged in the SAMC and FASFC, the statute of limitations for Dukes' claims ran through sometime in December 2012.

---

[6] The MDL Court also reiterated in its Transfer Order that it had denied proposed amendments that sought to no longer define PCIA as manifesting after six months of chemotherapy. (Doc. 12 at 75–76).

15

### 3. *Equitable Tolling*

Dukes next argues that equitable tolling precludes the dismissal of her claims. To receive equitable tolling, Dukes must establish "'(1) that [s]he has been pursuing [her] rights diligently, and (2) that some extraordinary circumstance stood in [her] way' as to the filing of [her] action." *Weaver v. Firestone*, 155 So. 3d 952, 957 (Ala. 2013) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Extraordinary circumstances are those "that are beyond the [plaintiff's] control and that are unavoidable even with the exercise of diligence." *Id.* at 958 (Ala. 2013) (citing *Ex parte Ward*, 46 So. 3d 888, 897 (Ala. 2007)). Whether equitable tolling applies is a fact specific inquiry, and the Court must consider "whether principles of 'equity would make the rigid application of a limitation period unfair' and whether the petitioner has 'exercised reasonable diligence in investigating and bringing [the] claims.'" *Id.* at 958 (alteration in original) (citing *Ex parte Ward*, 46 So. 3d at 897).

The Defendants first argue that Dukes "has pleaded only that Sanofi allegedly concealed the risks associated with Taxotere, not that some 'extraordinary circumstance' existed such that [] Dukes was prevented from filing suit." (Doc. 30 at 16). Further, they contend that allegations of publicly available information about links between Taxotere and PCIA foreclose equitable tolling. Dukes argues that these allegations are not enough to demonstrate that she did not exercise due diligence, because it requires the Court to make inferences in the Defendants' favor.

Despite the Plaintiff's allegations that the Defendants covered up and failed to warn of the connection between Taxotere and PCIA, the Court cannot say that it was

16

"unavoidable even with the exercise of diligence" that Dukes' claims were untimely filed. *Weaver*, 155 So. 3d at 958. "Equitable tolling is only applied or used sparingly . . . . Any inequitable circumstances preventing a party from initiating a timely lawsuit must be truly beyond the control of the plaintiff." *Id.* at 959 (citing 51 AM. JUR. 2d *Limitation of Actions* § 153 (2011)). The statute of limitations for Dukes' claims ran through December 2012, and she did not file her complaint until December 9, 2016. The SAMC alleges that by 2010, multiple journals and major news outlets had begun publishing reports and studies on the connection between Taxotere and PCIA. (Doc. 11-4 at 371–72). The number of studies only grew in the years after. The facts alleged are not sufficient to permit the Court to find that Dukes, exercising reasonable diligence, could not have discovered her injurers' identities until December 2016. *Weaver*, 155 So. 3d at 958; *see also In re Taxotere (Docetaxel) Prod. Liab. Litig.*, 995 F.3d 384, 394 (5th Cir. 2021) ("A reasonable inquiry would have uncovered at least some information that linked Taxotere to persistent alopecia."). Other courts have found similarly on this issue. *See id.*; *Maxwell v. Sanofi-Aventis U.S. LLC*, 2023 WL 7115575, at *4 (N.D. Ala. Oct. 27, 2023) ("The pleaded examples of publicly available information regarding a potential link between Taxotere and permanent hair loss suggest that Ms. Maxwell could have discovered her cause of action through reasonable diligence."). Further, the Court agrees with the Defendants that the allegations in Dukes' complaint do not sufficiently establish "that [s]he has been pursuing [her] rights diligently," or explain the extraordinary circumstances that prevented her from bringing the claim "even with the exercise of diligence." *Weaver*, 155 So. 3d at 957–58 (first citing *Pace*, 544 U.S. at 418, then citing *Ex parte Ward*, 46 So. 3d at 897).

The Court thus finds that equitable tolling does not apply to Dukes' claims.

### 4. ALA. CODE § 6-2-3

Finally, Dukes argues that ALA. CODE § 6-2-3 tolls the statute of limitations for her claims. Under § 6-2-3, claims sounding in fraud are not "considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which [s]he must have two years within which to prosecute [her] action." *Id.* Dukes' claims for fraud are due to be dismissed for failure to plead with particularity under Rule 9(b). However, § 6-2-3 may also apply to other torts not arising in fraud if the Plaintiff pleads the "fraudulent concealment of the existence of a cause of action." *Ladd v. Stockham*, 209 So. 3d 457, 468 (Ala. 2016); *see DGB, LLC v. Hinds*, 55 So. 3d 218, 224 (Ala. 2010).

To "show that a plaintiff's claims fall within the savings clause of § 6–2–3[,] a complaint must allege the time and circumstances of the discovery of the cause of action." *Ex parte Price*, 244 So. 3d 949, 956 (Ala. 2017) (per curiam) (quoting *DGB, LLC v. Hinds*, 55 So. 3d 218, 226 (Ala. 2010) (finding allegations that investors first discovered claims during a 2007 board meeting sufficient to allege the discovery of their cause of action)). "The complaint must also allege the facts or circumstances by which the defendants concealed the cause of action or injury and what prevented the plaintiff from discovering the facts surrounding the injury." *DGB, LLC*, 55 So. 3d at 226. Dukes has not alleged the time and circumstances of the discovery of her cause of action, and thus does not establish tolling under ALA. CODE § 6-2-3. The SAMC only contains allegations general to all plaintiffs, which detail how the Defendants hid the connection between Taxotere and PCIA. It does not, however, include allegations as to when and how Dukes discovered her

cause of action, and her FASFC contains no more detail than the time and place of her use of Taxotere.

"[T]he Alabama Supreme Court's language is clear:" if "the plaintiff did not plead fraudulent concealment, she may not invoke ALA. CODE § 6–2–3 in a fraud case." *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278, 1283 (11th Cir. 2006) (citing *Smith v. Nat'l Sec. Ins. Co.*, 860 So. 2d 343 (Ala. 2003) (finding that a plaintiff could not invoke § 6-2-3 where the plaintiff failed to allege fraudulent concealment with particularity)); *see also McKenzie v. Janssen Biotech, Inc.*, 295 So. 3d 617, 622 (Ala. 2019) ("When a reasonable person should have discovered a claim that is alleged to have been fraudulently concealed is generally a question to be determined by the trier of fact . . . . Nevertheless, before that determination can be submitted to the trier of fact, the plaintiff's allegations of fraud must meet certain pleading requirements."). Because Dukes did not properly plead her fraud claims or fraudulent concealment of her negligence and failure to warn claims, and the Court denied her motion to amend her complaint to do so, she cannot invoke § 6–2–3. Accordingly, the Court finds that Dukes' claims are barred on their face by the statute of limitations.

## VI. CONCLUSION

For the reasons stated, and for good cause, ORDERED that the Plaintiff's motion for leave to file an amended complaint (doc. 34) is DENIED. It is further

ORDERED that the Defendants' motion for judgment on the pleadings (doc. 29) is GRANTED. It is further

ORDERED that the Plaintiff's claims are DISMISSED with prejudice. A separate Final Judgment will enter.

Done this 1st day of July, 2024.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE

ORDERED that the Plaintiff's claims are DISMISSED with prejudice. A separate Final Judgment will enter.

Done this 1st day of July, 2024.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE